UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

TOMENA JENEEN RAWLS,                           Case No. 09-13924

            Plaintiff,                        Victoria A. Roberts
vs.                                            United States District Judge

GARDEN CITY HOSPITAL,                          Michael Hluchaniuk
                                               United States Magistrate Judge

          Defendant.
_____/

**REPORT AND RECOMMENDATION
MOTION FOR SUMMARY JUDGMENT (Dkt. 24)**

## I.   PROCEDURAL HISTORY

Plaintiff filed her complaint for employment discrimination under Title VII and the Elliott-Larsen Civil Rights Act and intentional infliction of emotional distress on October 5, 2009 against defendant, Garden City Hospital.  (Dkt. 1). This matter was referred to the undersigned for all pretrial proceedings by District Judge Victoria A. Roberts on April 20, 2010.  (Dkt. 11).  On August 15, 2011, defendant filed a motion for summary judgment.  (Dkt. 24).  On September 20, 2011, plaintiff filed a response.  (Dkt. 28).  Defendant filed a reply on September 30, 2011.  (Dkt. 29).  Pursuant to the Court's order, the parties filed a joint statement of resolved and unresolved issues.  (Dkt. 30).  In that statement, the parties set forth their agreement that plaintiff was no longer opposing summary

judgment on (1) her claim of gender-based hostile work environment or discrimination under Title VII and the ELCRA; and (2) her claim of race discrimination under Title VII and the ELCRA based on her termination. (Dkt. 30, Pg ID 485). The parties agreed that the only issues to be decided by the Court were whether defendant was entitled to summary judgment on (1) plaintiff's racial hostile work environment claim under Title VII[1]; and (2) plaintiff's intentional infliction of emotional distress claim. *Id.*

Before the hearing, plaintiff sought an extension of time to file a supplemental response to the motion for summary judgment, in order to add an affidavit from plaintiff. (Dkt. 31). This motion was granted via text-only order on October 18, 2011. A hearing was held on October 19, 2011, pursuant to notice. (Dkt. 25). At the hearing, counsel for defendant moved to strike plaintiff's affidavit, asserting that it was impermissible because it was inconsistent with her deposition testimony. Plaintiff argued that it merely supplemented her deposition testimony, rather than contradicting it. The Court took this oral motion under advisement, along with the motion for summary judgment.

This matter is now ready for report and recommendation. For the reasons set

---

[1] While the joint statement indicated that plaintiff was proceeding on the racial hostile work environment claim under both Title VII and the ELCRA, at oral argument, counsel further clarified that plaintiff was proceeding under Title VII only.

forth below, the undersigned **RECOMMENDS** that defendant's motion for summary judgment be **GRANTED**.

## II.  FACTUAL BACKGROUND

The parties do not disagree on the facts.  (Dkt. 28, Pg ID 411).  Defendant Garden City Hospital is a 323-bed acute care hospital located in Garden City, Michigan.  (Dkt. 24, Ex. A, Coldren Dec., ¶ 3).  Defendant operates a full service emergency department which treats patients from a variety of racial, ethnic, and cultural backgrounds.  *Id.*  Plaintiff Tomena Rawls, who is African-American, began her employment with defendant on May 31, 2000 as a Clinical Lab Assistant in the Laboratory Department.  (Dkt. 24, Ex.B, Offer Letter; Ex. C, Rawls Dep., p. 81-83, 127).  On October 14, 2003, plaintiff transferred to a Technical Partner position in the Emergency Department, where she remained until she began a medical leave of absence on May 9, 2009.  (Dkt. 24, Ex. C, Rawls Dep., p. 19, 131-132; Ex. D, 9/12/03 Signed Application Form).

Plaintiff's immediate supervisors in the Emergency Department were nurses Joyce Rappaport and Jane Bonkowski, who are white.  (Ex. C, Rawls Dep., p. 135-136; Ex. E, Rappaport Dec., ¶ 1-3; Ex. F, Bonkowski Dec., ¶ 1-3).  In 2007, Barbara Coldren, who is also white, became the Director of the Emergency Department, with ultimate supervisory authority over Plaintiff.  (Ex. C, Rawls Dep., p. 140; Ex. A, Coldren Dec., ¶ 2, 4).

Plaintiff described her job duties as a Technical Partner in the Emergency Department as "basically a support person for the ER/attending physician," explaining that she was to perform "anything" that the nurses directed her to do. (Ex. C, Rawls Dep., p. 132-133; Ex. G, Job Description).  Among other things, the Technical Partner position required plaintiff to "demonstrate[ ] exceptional customer service skills in providing services to patients."  (Ex. C, Rawls Dep., p. 135; Ex. G, Job Description).  Plaintiff was also required to "greet[ ] patients/coworkers in a warm, friendly manner."  (Ex. C, Rawls Dep., p. 135; Ex. G, Job Description).  As a front-line staff member in the Emergency Department, plaintiff was required to ensure that her interactions with patients and visitors were appropriate, since poor customer service or patient care would likely affect whether the patient returned to the hospital in the future.  (Ex. C, Rawls Dep., p. 141; Ex. A, Coldren Dec., ¶ 6).  Plaintiff admitted that customer service and patient care were critically important to defendant. (Ex. C, Rawls Dep., p. 86, 140).

Defendant's Emergency Department is often hectic, with patients seeking treatment for a variety of ailments.  (Ex. A, Coldren Dec., ¶ 5; Ex. C, Rawls Dep., p. 143; Ex. E, Rappaport Dec., ¶ 4; Ex. F, Bonkowski Dec., ¶ 4).  The department is open to the public, meaning that anyone can seek and obtain treatment there. (Ex.C, Rawls Dep., p. 141).  Plaintiff acknowledged that defendant is obligated to provide health care services to any member of the public who seeks such services

in the Emergency Department. *Id.* at 142. Due to the nature of the department, Emergency Department staff must often deal with patients and visitors who are under a great deal of stress, or who are combative, aggressive, or offensive. (Ex. A, Coldren Dec., ¶ 5). Sometimes patients and their visitors are inebriated, belligerent, ill-mannered and use inappropriate language. *Id*.; Ex. E, Rappaport Dec., ¶ 4; Ex. F, Bonkowski Dec., ¶ 4. Plaintiff conceded that the Emergency Department receives all types of patients and visitors. *Id*. at 144. She further admitted that all Emergency Department staff members had to deal with difficult patients and visitors. *Id*. at 144-145. In such situations, it is important that employees not escalate the situation by responding in a similar manner, but instead attempt to calm the individual down until he or she can receive necessary medical care and be discharged. (Ex. A, Coldren Dec., ¶ 5). At all times, patient care and treatment are of paramount concern. *Id*.; Ex. C, Rawls Dep., p. 118.

According to plaintiff, she suffers from a medical condition known as "femoral slipped epiphysis" in her right hip, which she was diagnosed with as a child. (Ex. C, Rawls Dep., p. 29). Plaintiff has undergone a number of surgeries as a result of this condition. *Id*. In early 2009, plaintiff's physician indicated that she would again require surgery, this time for a complete right hip replacement. *Id*. at 31-32). Accordingly, on May 13, 2009, plaintiff called Ms. Coldren at work to notify her that she (plaintiff) was unable to work and required a leave of absence

because she "need[ed] surgery."  *Id.* at 268; Ex. A, Coldren Dec., ¶ 9; Ex. H, Leave

of Absence Form.  Plaintiff was placed on a leave of absence effective May 9,

2009, the last date she worked.  (Ex. A, Coldren Dec., ¶ 9; Ex. H, Leave of

Absence Form).

Defendant's Leave of Absence policy, found in the Employee Handbook,

states that leaves of absence may not exceed one year.  (Ex. I, Handbook Excerpt).

At the end of her one year leave of absence, plaintiff's physician had not medically

cleared her to return to work, and she was consequently unable to return from her

leave.  (Ex. C, Rawls Dep., p. 268, 300-301).  Plaintiff was thus terminated on May

10, 2010 because she "did not return from [her] medical leave of absence."  (Ex. J,

Termination Letter and Form).  Plaintiff testified at deposition that she is still

unable to work and has now applied for social security disability benefits.  (Ex. C,

Rawls Dep., p. 25, 32).

## III.    ANALYSIS AND CONCLUSIONS

### A.    Standard of Review

Summary judgment is appropriate when the record reveals that there are no

genuine issues as to any material fact in dispute and the moving party is entitled to

judgment as a matter of law.  Fed.R.Civ.P. 56(c); *Kocak v. Community Health

Partners of Ohio*, *Inc.*, 400 F.3d 466, 468 (6th Cir. 2005); *Thomas v. City of

Chattanooga*, 398 F.3d 426, 429 (6th Cir. 2005).  The standard for determining

whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005), quoting, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986); *see also Tucker v. Union of Needletrades Indus. & Textile Employees*, 407 F.3d 784, 787 (6th Cir. 2005).  The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing the motion.  *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Twin City Fire Ins. Co. v. Adkins*, 400 F.3d 293, 296 (6th Cir. 2005).

Under Federal Rule of Civil Procedure 56, a party asserting a fact that cannot be or is not genuinely disputed must support that assertion by citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declaration, stipulations, admission, interrogatory answers, or other materials; or a showing that the materials cited do not establish the absence or presence of a genuine dispute or that an adverse party cannot produce admissible evidence to support the fact.  Fed.R.Civ.P. 56(c)(1).[2]

---

[2] Formerly, "Rule 56(e) require[d] that sworn or certified copies of all papers referred to in an affidavit must be attached to or served with that affidavit ... To be admissible, documents must be authenticated by and attached to an affidavit that meets the requirements of Rule 56(e) and the affiant must be a person through whom the exhibits could be admitted into evidence." *Johnson v. Memphis City*

B.   <u>Hostile Work Environment</u>

1.   Legal standards

Under the hostile work environment theory, in order to survive summary judgment, plaintiff must establish that:  (1) she is a member of a protected class ([African-American]), (2) she was subjected to harassment, either through words or actions, based on [race], (3) the harassment had the effect of unreasonably interfering with her work performance and creating an objectively intimidating, hostile or offensive work environment; and (4) there exists some basis for liability on the part of the employer.  *Grace v. Uscar*, 521 F.3d 655, 678 (6th Cir. 2008), citing *Fleenor v. Hewitt Soap Co.*, 81 F.3d 48, 49 (6th Cir. 1996).  Moreover, "[t]he harassment must meet both an objective and a subjective test, 'in other words, the conduct must be so severe or pervasive as to constitute a hostile or abusive working environment both to a reasonable person and the actual victim.'" *Id.*, quoting *Randolph v. Ohio Dep't of Youth Svcs.*, 453 F.3d 724, 733 (6th Cir. 2006).  Factors to consider in determining whether a hostile work environment

*Schools*, 2010 WL 1957267, *2 (W.D. Tenn. 2010), quoting 10A Charles A. Wright, Arthur R. Miller and Mary Kay Kane, Federal Practice & Procedure, § 2722, at 379-80 & 382-84 (1988). According to the Advisory Comments to the recent amendments, this specific requirement was omitted because as unnecessary given the requirement in subdivision (c)(1)(A) that a statement or dispute of fact be supported by materials in the record.  Comments, 2010 Amendments to Fed.R.Civ.P. 56, subdivision (c). Notably, the language changes have not changed the standard itself.  *Id.* ("The standard for granting summary judgment remains unchanged.").

actually exists include, "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Id.*, quoting *Harris v. Forklift Sys.*, *Inc.*, 510 U.S. 17, 23 (1993) (emphasis omitted). In addition, "courts must determine whether the 'workplace is permeated with 'discriminatory intimidation, ridicule and insult' that is 'sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive work environment.'" *Id.* at 678-679, quoting *Harris*, at 21 (internal citations omitted). Failure to establish a *prima facie* case is grounds to grant a defendant summary judgment. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478 (6th Cir. 1989).

Once a hostile work environment is established, an employee alleging sexual harassment by a coworker must still establish that the employer is liable because it knew or should have known of the harassment, yet failed to take prompt and appropriate corrective action. *EEOC v. Harbert-Yeargin, Inc.,* 266 F.3d 498, 518 (6th Cir. 2001). This Sixth Circuit held in *Blankenship v. Parke Care Ctrs.*, Inc., 123 F.3d 868 (6th Cir. 1997),[3] that when coworker harassment is at issue, an

---

[3] In *Hawkins v. Anheuser-Busch, Inc.*, 517 F.3d 321, 338 (6th Cir. 2008), the Sixth Circuit observed that *Blankenship* was modified by the Supreme Court's decisions in *Faragher v. City of Boca Raton*, 524 U.S. 775, 780, 807 (1998) and *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758-59 (1998), it remained good law for the proposition that a company may be held liable for coworker

employer is liable "if its response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Id.* at 872-73.

   2. Parties' arguments

  According to defendant, even accepting plaintiff's allegations as true for summary judgment purposes, she cannot show that any of the incidents she describes were based on her race, the third element of the prima facie case.   To prove that the alleged harassment was based on her race, plaintiff must provide either "(1) direct evidence of the use of race-specific and derogatory terms or (2) comparative evidence about how the alleged harasser treated members of both races in a mixed- race workplace." *Williams v. CSX Transp. Co., Inc.*, 643 F.3d 502, 511 (6th Cir. 2011) (internal citations omitted).   "Harassment is based on race when it would not have occurred but for the plaintiff's race; the harassing conduct need not be overtly racist to qualify." *Id.*   As to the co-worker harassment, it is evident that none of the incidents of alleged harassment involved the use of

---

harassment if its "response manifests indifference or unreasonableness in light of the facts the employer knew or should have known." *Blankenship*, 123 F.3d at 873; *see also Collette v. Stein-Mart, Inc.*, 126 Fed.Appx. 678, 684 n. 3 (6th Cir. 2005) (noting that *Blankenship's* suggestion that "mere negligence" is insufficient to establish employer liability was overruled by *Ellerth/Faragher* and suggesting that, post-*Ellerth/Faragher*, "an employer may be held liable when its remedial response is merely negligent, however well-intentioned"); *Fenton v. HiSAN, Inc.*, 174 F.3d 827, 829 (6th Cir. 1999) (holding that, post-*Ellerth/Faragher*, the standard for coworker harassment is negligence, but applying *Blankenship* to define negligence as an employer response that "manifests indifference or unreasonableness in light of the facts").

"race-specific and derogatory terms"; thus, plaintiff must provide "comparative evidence" regarding the treatment of white co-workers to establish that the alleged harassment was race-based. *Id*. In many instances, defendant asserts, she cannot do so since the incidents involved plaintiff and white employees being subject to the same allegedly harassing conduct (e.g. being "written up" for checking on a patient's lab results, or being counseled to work together, or being reported by a nurse). (Ex. C, Rawls Dep., p. 68-69, 70-71, 93-96).

In the remaining instances, defendant argues that plaintiff has provided no evidence that white employees were treated any differently. For example, with respect to plaintiff's claim that Ms. Coldren frequently spoke with her to discuss complaints levied against her (plaintiff), she admitted she "really [didn't] know" if Ms. Coldren was also speaking to other employees about complaints levied against them. *Id*. at 73). Thus, defendant contends, there is no evidence in the summary judgment record demonstrating that plaintiff was targeted for alleged harassment on the basis of her race. Defendant also argues that plaintiff has not shown that she was subject to frequent or severe harassment, since the incidents supposedly spanned a two-year period beginning in 2007. (Ex. C, Rawls Dep., p. 166-167); *Allen v. Mich. Dep't. of Corr.*, 165 F.3d 405, 411 (6th Cir.1999) (to establish a hostile work environment, "the harassment should be ongoing, rather than a set of isolated or sporadic incidents.").

As to the harassment by patients and visitors, defendant points out that two of the four incidents identified by plaintiff involve the use of "race-specific and derogatory terms" and defendant argues that there is no evidence that any of the incidents substantially interfered with her job performance.  Additionally, defendant argues that plaintiff cannot establish that it is reasonable to hold defendant liable for the actions of her patients and visitors.  In order for alleged harassment by non-employees (e.g. patients and visitors) to be actionable against defendant, plaintiff must show that defendant "fail[ed] to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known."  *Lockard v. Pizza Hut, Inc.*, 162 F.3d 1062, 1074 (10th Cir. 1998) (internal citations omitted). Defendant asserts that its responses to the incidents were "measured and balanced" against its paramount concerns of patient treatment and care and customer service. Defendant argues that, "[r]ather than escalate the situation and potentially jeopardize a patient's health by summarily throwing patients or visitors out of the hospital, Defendant instead removed or offered to remove Plaintiff from the situation by temporarily assigning her to another area of the Emergency Department, and then quickly treated and discharged the patients." (Dkt. 24, Pg ID 191; Ex. A, Coldren Dec., ¶¶ 5, 7; Ex. C, Rawls Dep., p. 57, 58, 160; Ex. E, Rappaport Dec., ¶ 5; Ex. F, Bonkowski Dec., ¶ 5).  Defendant argues that its

actions ensured that, on one hand, plaintiff was no longer subject to further encounters with those patients or visitors, while on the other hand, the patients and visitors received necessary medical treatment, which is the reason they came to the Emergency Department in the first place. Thus, while plaintiff was clearly dissatisfied with defendant's response, defendant argues that there is no real dispute that it acted appropriately "to remedy or prevent" alleged harassment of plaintiff by patients or visitors.

In response, plaintiff argues that the normal protocol for handling "abusive and threatening" visitors is to have the visitor removed from the hospital. (Dkt. 28, Ex. 1). At the very least, plaintiff contends, the abusive visitor should have been made to stay in the waiting area. Instead of following this more reasonable approach, defendant's choice to remove plaintiff from her work area was not appropriate. According to plaintiff, while there is no direct evidence showing discriminatory animus on the part of management and supervisory personnel, "it is a question of fact whether management allowed an environment of hostility and scorn with a racial animus to metasticize into a hostile workplace environment. (Dkt. 28, Pg ID 415). Plaintiff points to two separate instances in which white nurses were in danger of hostile or belligerent visitors and the Garden City police were called. (Dkt. 28, Ex. 1, pp. 161-162). Plaintiff argues that these two incidents are comparable even though she was not physically assaulted (like the

two nurses) because she was subject to abuse and threats that could easily escalate into violence. Plaintiff points to the following to support her claim of a race-based hostile work environment: she is African-American, she was bombarded with frivolous write-ups and her safety was neglected, while the safety of her white coworkers was not neglected; the write ups and neglect of her safety appear to have been based on race; the harassment unreasonably interfered with her work because she feared for her job and her safety daily, causing stress, which is part of the reason she could not return to work; and persons in supervisory and decision-making positions caused the write-ups, abuse, and neglect of her personal safety.

3.     Analysis

Plaintiff does not allege that any racially derogatory comments were made by any coworkers or supervisors in the workplace; her claim is based on the theory that the facially neutral conduct of her coworkers and supervisor towards her was, in fact, based on her race. Conduct that is not explicitly race-based may be illegally race-based and properly considered in a hostile-work-environment analysis when it can be shown that but for the employee's race, she would not have been the object of harassment. *Farmer v. Cleveland Pub. Power*, 295 F.3d 593, 605 (6th Cir. 2002), abrogated on other grounds by *White v. Columbus Metro. Housing Auth.*, 429 F.3d 232, 240-41 (6th Cir. 2005). The undersigned finds *Clay v. United Parcel Service, Inc.*, 501 F.3d 695 (6th Cir. 2007) to be dispositive of

plaintiff's claim in this regard.  In *Clay*, the Court found similar conduct by coworkers and supervisors to create a question of fact where the plaintiff was the "only black employee in her work area" and plaintiff offered evidence that her supervisor disciplined her for conduct for which he did not discipline her white co-workers.  *Clay*, 501 F.3d at 707.  In contrast, plaintiff has not offered any evidence that she was the only black worker in her area *and* that white employees were not disciplined for the same conduct.  In fact, as defendant points out, the evidence is clear that white coworkers were disciplined for exactly the same conduct.  Thus, the undersigned concludes that plaintiff has not created a genuine issue of material fact that the coworker/supervisor harassment was based on race.

In addition, the undersigned also concludes that the alleged harassment, by coworkers/supervisor and visitors/patients was not sufficiently severe or pervasive. At the hearing, the parties argued at length about whether plaintiff believed that the harassment was based on her race or simply because people did not like her or because she was merely a "tech" as opposed to nurse.  In the view of the undersigned, it simply does not matter.  Assuming that plaintiff believes the harassment she suffered was because of her race, that simply does not create an issue of fact.  While it may satisfy the subjective prong of the hostile work environment test under *Harris v. Forklift Systems*, it does not, in and of itself, create a material issue of fact because plaintiff must also satisfy the objective prong

of that test, which requires an environment sufficiently severe or pervasive so as to create the type of environment that a reasonable person would find it to be hostile or abusive.  While there is no magic number of incidents that must occur within a certain period of time, when comparing the conduct of which plaintiff complains to those in this Circuit where a hostile work environment was found to exist, plaintiff's claim simply comes up short.  For example, in *Clay*, the Sixth Circuit concluded that 15 incidents over a two-year period was not sufficiently pervasive.  The incidents recounted in *Clay* were far more severe and pervasive than those identified by plaintiff.[4]  *See also Clay*, 501 F.3d at 708, comparing *Jordan v. City of Cleveland*, 464 F.3d 584, 598 (6th Cir. 2006) (conduct was sufficiently severe or pervasive when for over ten years plaintiff was exposed to racial slurs, demeaning jokes, and inflammatory graffiti, experienced "isolation and segregation" and

---

[4]  In *Clay*, plaintiff alleged that: her supervisors had prevented her from applying and obtaining certain job positions; adversely transferred her to an undesirable shift; assigned to her job duties that she was not physically capable of performing and not qualified for, requiring very heavy lifting, ultimately leading to a groin injury; criticized her for eating during work, for leaving her work station to get a cup of coffee, for using the bathroom at the end of her break, and for the size of her earrings; assigned her tasks outside of her job description; falsely accused her of taking boxes while on company time; while she was on leave for the groin injury, someone cut the lock on her desk, removed supplies, and placed them in a box, although a white co-worker was able to store his supplies in a locked desk drawer; accused her, in front of other employees, of standing around on the job because she ate a doughnut while waiting for a coworker who asked for her assistance; criticized her for the route she took, but did not chastize her white co-workers who took the same route and had her timed to record how long it took her to get to her work station.

"disparate discipline and additional duties.") with *Burnett v. Tyco Corp.*, 203 F.3d 980, 984-85 (6th Cir.), *cert. denied*, 531 U.S. 928 (2000) (three sexually offensive remarks made by the plaintiff's supervisor at the beginning and end of a six-month period did not constitute pervasive discriminatory conduct).

Finally, as to the harassment by patients/visitors, the undersigned also concludes that defendant took prompt remedial action regarding these incidents. While plaintiff complains that the police were called when white nursing staff were similarly in threatening situations, plaintiff admits that those incidents involved physical assaults, which hers did not. Plaintiff does not like the prompt, remedial action taken by defendant and would have preferred that different action be taken. However, she has not presented evidence that defendant's response was unreasonable, under the circumstances. *See Hawkins v. Anheuser–Busch, Inc.*, 517 F.3d 321, 340 (6th Cir. 2008) (citations omitted) ("An employer's response is unreasonable if it 'manifests indifference or unreasonableness in light of the facts the employer knew or should have known," but "[a] response is generally adequate, however, if it is "reasonably calculated to end the harassment"). Plaintiff does not indicate that the harassment by patients/visitors continued after the remedial action was taken. Moreover, any interference with plaintiff's job duties was minor and short-term until those patients/visitors could be treated and left the hospital. Significantly, plaintiff does not present any evidence that any white staff

were treated differently during similar incidents.  The undersigned is simply not persuaded that the two incidents identified, which involved physical assaults, and where the police were called, are comparable.

C.     <u>Intentional Infliction of Emotional Distress</u>

Under Michigan law, a plaintiff must demonstrate that defendant's conduct was extreme and outrageous in order to sustain a claim of intentional infliction of emotional distress.  *Schliewe v. Toro*, 138 Fed.Appx. 715, 723 (6th Cir. 2005), citing *Roberts v. Auto-Owners Ins. Co.*, 422 Mich. 594; 374 N.W.2d 905 (1985); *Van Vorous v. Burmeister*, 262 Mich.App. 467; 687 N.W.2d 132 (2004).  A plaintiff must meet a very high burden to show extreme or outrageous conduct, and the fact that a plaintiff cannot meet the lower standard of "severe or pervasive" conduct, in the view of the undersigned, likely precludes a finding that a genuine issue of material fact has been raised on whether defendant's was "beyond all possible bounds of decency."  *See e.g.*, *Brown v. Morton's of Chicago/Detroit, Inc.*, 1999 WL 33451613 (Mich. App. 1999); *Godfredson v. Hess & Clark, Inc.*, 173 F.3d 365, 376 (6th Cir. 1999) (explaining, in the context of the ADEA, that "an employee's termination, even if based upon discrimination, does not rise to the level of 'extreme and outrageous conduct' without proof of something more. If such were not true, then every discrimination claim would simultaneously become a cause of action for the intentional infliction of emotional distress.").  The *prima*

*facie* claim of intentional infliction of emotional distress involves the following four elements: (1) the defendant's extreme and outrageous conduct; (2) the defendant's intent or recklessness; (3) causation; and (4) severe emotional distress actually suffered by the plaintiff. *Lavack v. Owens World Wide Enterprise Network, Inc.*, 409 F.Supp.2d 848, 857 (E.D. Mich. 2005). Under Michigan law, the question of whether the conduct in this case is sufficiently extreme and outrageous to justify the cause of action to proceed is a question of law for the Court. *Van Vorous*, 262 Mich.App. at 481. A trial court is to serve as the gatekeeper as to whether the conduct in question could reasonably be deemed sufficiently extreme and outrageous before even allowing it to go to the jury. *Sawabini v. Desenberg*, 143 Mich.App. 373, 383; 372 N.W.2d 559 (1985). Assuming all of plaintiff's allegations are true, the undersigned concludes that they simply do not "go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." Graham v. Ford, 237 Mich.App. 670, 604 N.W.2d 713 (Mich. 1999). In this case, the undersigned concludes that defendant's conduct simply does not rise to the level of "extreme and outrageous" and her claim for intentional infliction of emotional distress must fail.

## IV.   RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that

defendant's motion for summary judgment be **GRANTED**.

The parties to this action may object to and seek review of this Report and Recommendation, but are required to file any objections within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1981).  Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Sec'y of Health and Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987).  Pursuant to Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc.  Any objection must recite precisely the provision of this Report and Recommendation to which it pertains.  Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity.  Fed.R.Civ.P. 72(b)(2), Local Rule 72.1(d).  The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc.  If the Court determines that any objections are without merit, it may

Report and Recommendation
Motion for Summary Judgment
*Rawls v. Garden City Hospital*; Case No. 09-13924

rule without awaiting the response.

                                                   s/Michael Hluchaniuk

Date: February 16, 2012                Michael Hluchaniuk
                                            United States Magistrate Judge

## <u>CERTIFICATE OF SERVICE</u>

      I certify that on February 16, 2012, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will send electronic notification to the following: <u>John J. Holler, III, Thomas L. Fleury, and Gouri G. Sashital</u>.

                                                   s/Tammy Hallwood
                                            Case Manager
                                            (810) 341-7887
                                            tammy_hallwood@mied.uscourts.gov

21

                                            Report and Recommendation
                                            Motion for Summary Judgment
                              *Rawls v. Garden City Hospital*; Case No. 09-13924